**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JENNIFER SHEA** : | **CIVIL ACTION NO.: 3:20-CV-01195** |
| : | |
| **vs.** : | |
| : | |
| **THE PRUDENTIAL INSURANCE** : | |
| **COMPANY OF AMERICA** : | **AUGUST 17, 2020** |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action on account of discrimination based on the physical disability of a heart condition against the plaintiff, Jennifer Shea, depriving the plaintiff of rights and privileges of a citizen of the United States; failure to prevent and failure to aid in preventing plaintiff's deprivation of rights and privileges of a citizen of the United States. This action is brought pursuant to the Americans with Disability Act of 1991, 42 U.S.C. 12101, et seq and Connecticut General Statute 46a-60(a)(1). All causes of action arise pursuant to the plaintiff's employment with the defendant, Prudential Insurance Company of America and Prudential Financial Services.

### PARTIES, JURISDICTION, VENUE

2. The plaintiff, Jennifer Shea (hereinafter "Shea"), is a citizen of the United States and

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

State of Connecticut residing in Wallingford, Connecticut and was an employee of the defendants as defined by the American with Disability Act of 1991 § 12111(4).

3.  The defendant, The Prudential Insurance Company of America ("Prudential") is a domestic profit corporation duly organized and existing under the laws of New Jersey, with a principal place of business located at 751 Broad Street, Newark, New Jersey and with an office in Hartford, CT located at 280 Trumbull Street.  Upon information and belief, Prudential was an employer of the plaintiff as defined by the American with Disability Act of 1991 § 12111(5)(A).

4.  Upon information and belief, the plaintiff was employed by Prudential Financial Services, a subsidiary and/or affiliate of Prudential. In the defendant's answer to the plaintiff's affidavit of discriminatory practice, the defendant states that the plaintiff incorrectly identified Prudential Financial Services as the respondent in the CHRO matter and labeled the respondent as The Prudential Insurance Company of America.

5.  This court has jurisdiction over the plaintiff's claim under the Americans with Disability Act, 42 U.S.C. 12101, et seq. and under the United States Constitution.

6.  This court has supplemental jurisdiction over plaintiff's claims under Connecticut statutory law and Connecticut common law based on 28 U.S.C. 1367, which authorizes jurisdiction over state law claims.

7.  Venue is proper under 28 U.S.C. 1391(b) because the events giving rise to the plaintiff's

claims occurred in this district and since the relevant employment records are maintained in Connecticut and the plaintiff would have worked in this district but for unlawful employment practices, proper venue is provided.

## **PROCEDURAL HISTORY**

8. The plaintiff, Jennifer Shea, is an individual aggrieved by the conduct of the defendants.

9. The plaintiff filed a charge of discrimination against Prudential with a business address of 280 Trumbull Ave with the Connecticut Commission on Human Rights and Opportunities Commission (hereinafter referred to as "CCHRO") on or about September 9, 2019, within 180 days of the acts complained of.

10. The defendants filed an Answer to Complainant's Affidavit of Discriminatory Practice and Answer to Schedule A on January 21, 2020.

11. The parties engaged in a mandatory mediation conference on Thursday, May 14, 2020.

12. After the mandatory mediation conference, both parties requested an early legal intervention (ELI) and on May 29, 2020, the plaintiff requested a release of jurisdiction.

13. On June 1, 2020, the CCHRO issued to the plaintiff a Release of Jurisdiction, a copy of which is attached hereto and marked as Exhibit A.

14. This action was brought within 90 days of receipt of the notice.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

**STATEMENT OF FACTS**

15. Ms. Shea was employed as a Manager, Project Management-Vendor Governance at Prudential from August 1, 2017 until she was wrongfully terminated. Ms. Shea initially started at Prudential in August of 2011 as Senior Process Management Specialist: Financial Operation-Project Management and worked as Associated Manager, Execution & Operations for three and a half years.

16. Ms. Shea's responsibilities as Manager included acting as a liaison with outside vendors and internal units at Prudential. Ms. Shea's work was consistently recognized as "Effective" or "Role Model" and is documented in annual performance appraisals.

17. In September of 2018, Prudential changed its medical insurance plan, and the diabetes medication that Ms. Shea used that had always been covered in the past was scheduled to no longer be covered. Ms. Shea and three other employees objected to the change in medical insurance. In November of 2018, Prudential reversed their decision and offered coverage consistent with the prior plan and Ms. Shea's diabetes medication would continue to be covered. Ms. Shea was informed of this decision through a co-worker.

18. On or about October 3, 2018, before Ms. Shea took scheduled Paid Time Off

("PTO"), Ms. Shea spoke with a newer employee/teammate, Marco Franchi, who had started late in July of 2018. Ms. Shea spoke with Mr. Franchi about his responsibilities while Ms. Shea was out of the office on PTO.

19. Ms. Shea spoke with other employees regarding Mr. Franchi about assisting him if necessary. Ms. Shea notified her supervisor, James Orioles, of the conversation that Ms. Shea had with Mr. Franchi regarding his tasks during this time.

20. Ms. Shea was scheduled to be on vacation/planned PTO from October 4, 2018 through October 12, 2018.

21. Upon her return from her PTO, it was apparent that Mr. Franchi did not attend to the emails or any of the other tasks that Ms. Shea laid out. Mr. Franchi stated that he was assigned to a "special project" without identifying what it was. Mr. Orioles, however, stated that Mr. Franchi was not on any project that took priority over the daily email responsibilities.

22. Ms. Shea spoke with Mr. Franchi about the importance of addressing and responding to emails as she had told him to do. Mr. Franchi, however, had indicated to Mr. Orioles that he felt "intimidated" by Ms. Shea because of the necessary discussion she had with him regarding his neglected tasks.

23. As a result, Ms. Shea was issued a "write up" for the interaction with Mr. Franchi. Ms. Shea was told that she could not add comments to the write-up before signing it, but was

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

offered the opportunity to send in a separate word document. Ms. Shea did not sign the write-up. This write-up was subsequently revised to included less bullet points and a clearer description of the alleged incident. Ms. Shea never saw this second version of the "write-up" until it was offered as evidence as Ms. Shea's unemployment compensation hearing in September of 2019. Ms. Shea began to believe that there was a link between her insisting on adequate insurance coverage and the write-up. Therefore, Ms. Shea expressed her concerns to Human Resources.

24. At about the same time, Ms. Shea's blood pressure rose drastically and was informed by her cardiologist that she was going to need further medical testing. The stress of being wrongfully accused and written-up contributed to her issues with high blood pressure.

25. Ms. Shea met with Bernice White from Human Resources to address the inaccurate written warning and the pretextual nature of this warning at that time and how it seemed to be affecting Ms. Shea's health. Ms. White followed-up with this meeting in an email stating that Ms. Shea should consider going out on medical leave in order to address any health issues.

26. Ms. Shea had another meeting with Mr. Orioles and Ms. White regarding the written warning. By this point, Ms. Shea had gone through stress tests and other medical evaluations and was informed that she would need to have an inpatient heart procedure.

27.  Ms. Shea scheduled the inpatient heart procedure and was advised by her doctor to stay

6

out of work. During this time, Ms. Shea communicated with her supervisor, Mr. Orioles about the status of her health condition and the need to stay out of work.

28. Ms. Shea, shortly thereafter, found out from her cardiologist that she would need open heart surgery to address her medical condition and could not return to work until after she had received the surgery.

29. On February 13, 2019, Ms. Shea had open heart surgery to correct a defect in her left main coronary artery.

30. On or about February 21, 2019, Ms. White from Human Resources contacted Ms. Shea at home and stated "we are investigating your emails" without providing any further detail or information. Since this was only three days after Ms. Shea had been released from the hospital, Ms. Shea informed Ms. White that she was not feeling well enough to discuss the issue, that the topic was very stressful and that it would be easier to respond to these questions once Ms. Shea returned to work. Ms. Shea was expected to return back to work on April 10, 2019. Ms. Shea also informed Ms. White that she did not have enough information to respond to what the perceived problem could be.

31. Ms. Shea did not remotely access the work system following her surgery and she was unaware of any prior problems related to her email.

32. On April 5, 2019, Ms. Shea received a letter advising her that her return to work would

be on "planned administrative leave."

33. On April 11, 2019, Ms. Shea answered a call from an investigator working for Prudential who asked Ms. Shea if she had deleted emails. Ms. Shea informed the investigator that she had not that she was aware of nor would she do so intentionally. On April 23, 2019, Ms. Shea was contacted again by the investigator who claimed there were problems with deleted folders and emails, but did not provide any further specific details. Without more context or information, which the investigator refused to provide, Ms. Shea could not respond to the investigation. Ms. Shea was not aware of any problems with deleted folders and couldn't imagine what the problem could be.

34. Ms. Shea contacted Ms. White from Human Resources to ask for more information regarding the investigator's phone calls, but never received a reply and was never given any information to rebut the investigator's findings, if any.

35. Ms. Shea's federal FMLA period expired on February 19, 2019 and her Connecticut FMLA expired on March 19, 2019. However, Ms. Shea had discussions with the in-house Prudential Short-Term Disability staff about an April return to work date and was advised that it would be okay. Ms. Shea also provided a medical release so that the short-term disability staff at Prudential could speak with her doctors. The additional leave was granted.

36. Regardless of taking appropriate steps to go on approved medical leave and attempting to

cooperate and answer any questions that the investigator had regarding the alleged deleted emails, Ms. Shea was terminated on May 13, 2019. Prudential stated the reason for such termination was for allegedly deleting emails from the work system. Ms. Shea was never given any proof of these alleged deleted e-mails and was not given any of the information that she requested from Human Resources.

## COUNT ONE: VIOLATION OF THE AMERICANS WITH DISABILITY ACT 42 U.S.C. 12101, et seq. (AGAINST PRUDENTIAL):

37. Paragraphs 1 through 37 are hereby incorporated and made by reference as if fully set forth herein.

38. The plaintiff is disabled as defined by 42 U.S.C. 12102 (1) because the plaintiff has two physical impairments, diabetes and a heart condition, that substantially limits one or more of the plaintiff's major life activities.

39. The defendants, through their managers and employees, engaged in conduct as described above which constitutes discrimination based on the plaintiff's physical disability of diabetes and a heart condition.

40. The plaintiff experienced discrimination based on her physical disability of diabetes and heart condition in violation of Americans with Disability Act, 42 U.S.C. 12101, et seq, when the defendant wrongfully terminated the plaintiff.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

**COUNT TWO: DISCRIMINATION BASED ON A PHYSICAL DISABILITY IN VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN.GEN.STAT. 46a-60(b)(1)**

41. Paragraphs 1 through 37 are hereby incorporated and made by reference as if fully set forth herein.

42. The defendant's actions, by and through the managers and employees, violated Connecticut Fair Employment Practices Act, C.G.S. 46a-60(b)(1), which prohibits discrimination based on a physical disability, in one or more of the following ways:

    a. The plaintiff was fired as she returned from valid medical leave.

    b. The issue of the deleted emails was a pretext to her termination and the plaintiff was not given a fair chance to explain and/or disprove the deleted emails while the plaintiff was out on medical leave.

    c. The defendant contacted the plaintiff while she was on medical leave inquiring into a serious accusation, but never gave the plaintiff any information to defend herself against the accusations;

    d. The defendant terminated the plaintiff because of her physical disability.

43. As a direct and proximate result of the defendant's discrimination and wrongful termination, plaintiff has been deprived of employment as well as income, wages, and benefits because of her physical disability.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

44. As a further result of defendant's discrimination of the plaintiff, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, damage caused by the plaintiff's loss of insurance, savings, and investment opportunities, and other pecuniary and non-pecuniary losses.

 

THE PLAINTIFF,
JENNIFER SHEA


BY__/s/__CT02374_____
      Louis Federici, Her Attorney
      Federal Bar No. CT02374
      Parrett, Porto, Parese & Colwell, P.C.
      2319 Whitney Avenue, Suite 1-D
      Hamden, CT 06518
      T: (203) 281-2700
      F: (203) 281-0700
      Lfederici@pppclaw.com

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

## **CERTIFICATION**

I certify that a copy of the above was or will immediately be mailed or delivered electronically or non-electronically on August 17, 2020 to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served.

          /s/ CT 02374
          LOUIS FEDERICI
          Commissioner of the Superior Court

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340